May it please the court, your honors, Donald Furzig for the appellants Robert and Valerie McKee. The issue involves whether the tax court abused its discretion by holding that the IRS was justified, was substantially justified, in raising various issues. The main issue was the disallowance of losses from a subchapter S corporation called Athgarvin. And this arose because a revenue agent believed that he could disallow these suspended losses because the appellants had erroneously claimed losses in earlier years, and because the statute of limitations had run on those losses, the revenue agent wanted to reduce the suspended losses. Losses which were disallowed, but because of income that arose in 1999 and 2001, the appellants could claim these losses. The accountant wrote a letter on August 9, 2002, explaining that these suspended losses should be released because of the income in 1999 and 2001. The revenue agent ignored the letter, ignored the statute, never asked for any documents in this case, and issued a report. And this report was incorporated in a notice of deficiency, and the adjustment was in Schedule E, and it was buried in some other adjustments, and the explanation was that land could not be depreciated. So the appellants were not even aware of what the adjustment was all about. The appellants filed a petition, and as to Schedule E, claimed that they did not even claim as much depreciation as was disallowed, and that the adjustment was inadequate. The explanation was inadequately explained. The government filed an answer with a general denial, and the case then came before an appeals officer, and a month after the answer was filed, the case was on a calendar, a tax court calendar for October 20th. So the appeals officer was under the gun to try to settle the case, and he has a — in his declaration, the appeals officer states that a careful reading of the statute would clearly indicate that the appellants are right, that the losses are allowable, and there was no factual basis for the — for treating the losses as passive losses. So the case was settled on that basis. The government conceded that the losses should be allowed because of the income in 1999-2001. A motion for fees was filed by the appellants, and the tax court judge, in a memorandum opinion, the first opinion, which he calls McKee No. 1, decided that the main reason for the fees not being allowable was that when the accountant wrote his letter on August 9th of 2002, he didn't provide any documents. But there were never any documents requested. The government usually has what they call an IDR, information document request. This was — this was not issued to the — to the appellants. The funny part is that — or the sad part is that the case was settled without requiring the appellants to provide any documents. So the documents really weren't required. A motion for rehearing was filed on that basis that the government had all the documents. They had the tax returns for all of these years. And therefore, the — you know, there was no substantial justification on the government's part. And the tax court judge then said that tax returns are not that important. I mean, because they could not — they could not be true. The income might not be accurate. There was no audit of the income. And therefore, the tax court judge upheld that decision. The — I think the government relies on a — on a case called Nolley, which says that this is something of a first impression. But really, this is not first impression, Your Honors. The government was ignoring — completely ignoring the statute, the Internal Revenue Code, because there was never any basis for the position that the revenue agent took to reduce the losses by erroneously claimed losses. This was something out of his pure imagination. The burden of proof was on — was on the government. And the interesting part is, in the committee reports, it says there's a rebuttable — a rebuttable presumption that the government has to overcome if the government ignores rulings, if they ignore any of their own regulations. It doesn't say what happens if they ignore their own — the own statute, the Internal Revenue Code. I would think it would be more than a rebuttable presumption. There are other cases that would indicate that if the — if the government does ignore a statute, then they should be held accountable. The big case is Hansen in the Fifth Amendment. The court held that the government was not substantially justified. The government also raises the issue that the case was settled very quickly, so there's no harm, no foul. But — and I think they cite this circuit, the Bertolino case, where the case was settled very quickly. But in Bertolino, the taxpayer created the problem himself. He didn't provide an AMT schedule, Altman Tax Schedule. And then when he went to appeals, unlike the appellant's case, the appeals officer said, you have to provide these tax returns. And so the three years' tax returns were provided, and so they held, in that case, that the government was substantially justified. In our case, there were no documents to be provided. This would be pure fiction. The government also cites a case called Kim, a district court case in California, and there's not enough facts to know if a statute was ignored or — or it's just an exchange, a Section 1031 exchange, I think, in Kim. But the burden of proof at that time was — was on the taxpayer. In 1996, the committee reports evidence that the law was changed, that the burden of proof is now on the government to show that they are substantially justified. I think I'd like to — Counsel, help me a little bit on what you said was the main issue. I know that you knocked the IRS down from $265,000 to $45,000, approximately. And it's approximately a 73 percent reduction, as I — it looks like to me. Was that all the one issue, the disallowance of losses from the sub-S, because the IRS agent just got it wrong and thought losses beyond the statute of limitations couldn't be deducted? I think the IRS got it wrong, and that was the main issue. And I think that — When you say main, what I'm — what I'm trying to find out is main. Was the whole difference, the whole 73 percent difference, that issue or most of it? No, it wasn't, Your Honor. It was — that was about 50 percent of the total. And then — What was the other 50 percent? The other 50 percent included many other issues. One was an error the IRS made by doing the getting back a net operating loss, even though the net operating loss was taken into account. So the government conceded that fairly promptly once they were apprised of that in the — by the appeals office, after the answer was filed. There was a capital gain ordinary income issue, which I think the tax court judge thought was one of the main issues, but it only accounted for about 16 percent of the tax. But then there was a dealer — a dealer tax, which was related to the capital gain ordinary income tax, and that was 23 percent. And the dealer tax — again, the government ignored the statute. In computing — in computing the tax on the dealer tax under 453L of the Internal Revenue Code, the agent, instead of computing the tax on the — on the tax itself, computed it on the capital gain. And this was just a poor reading of the statute, and even though the appeals officer in his declaration does not discuss that issue, that consumed quite a bit of time. So there were — So if I've got this right, you — you saved your clients about $220,000. About half of that was the sub S dispute, and the other $120,000 is a whole bunch of mistakes the agent made. And the big — the largest one of the — of the other 50 percent would be the computation of the dealer tax. Well, isn't it a bit more than that in savings, because you had the net loss carryforward that was allowed? There was — that was an issue, too. So you had the net reduction of $200,000 on that tax, but then — but then you got reinstated a net loss carryforward, so it would reduce the tax in future years, too. Right? Right. Am I wrong on that? Okay. Well, your time has expired. We'll give you a couple minutes for rebuttal. Thank you, Your Honor. Thank you. I forgot your materials. May it please the Court. Carol Barthel for the Commissioner of Internal Revenue. To your tax court's denial of litigation, cost to the McKees was not an abuse of its discretion. Cost will be awarded if the government establishes that its position was substantially justified, that is, justified to agree that would satisfy a reasonable person. We agree that the — that — do you — does the government agree that, in this case, the McKees were a prevailing party? The — we did not contest that they prevailed as to the most important issues or to the greatest — the greatest amount of the tax. But you will not be considered a prevailing party if the government shows that it was substantially justified in taking the positions that it took. And in this case, the government was substantially justified in taking the positions that it took based on the information and the arguments that had been presented to it at the time it took those positions. Well, wait a minute. Did — you said several things there that confused me. One is, you said part of prevailing party is substantial justification. I thought they were two different issues. It's sort of oddly put together. They are the prevailing party. You — Even if they are prevailing party, they lose if your position is substantially justified. Isn't that right? They will not be considered a prevailing party, even if they have prevailed as to the most important issue or as to the bulk of the deficiency, if the government — It's a two-step approach. Yes. I mean, we have to determine whether they're — I think all Judge Kleinfeld is asking is, before you get to the second step, you have to determine they're a prevailing party. And you don't contest that they're a prevailing party for the purposes of the first step, right? Not for the purposes of the first step. All right. We have — we do not contest that. But we do — Now, my second — my second question is about the documents. I don't think you'd have much trouble if your position was substantially justified based on all the returns and supporting documents you had. And then when you asked for more documents and you got them, the government said, oh, now we see. Your position's okay. But in this case, as far as I can tell, the government had all the documents. It was just a question of not being alerted to its own code and regulations. Have I got that wrong? The second part of that is incorrect. The government was quite aware of its own code and regulations. You have all the documents you needed? There really — well, there was certain information that was presented to the appeals officer that had not previously been presented. More importantly — Documents or arguments? Primarily arguments rather than documents. And statements of fact. This is not primarily a problem with the documents so much as with the contentions. The only contentions that had been raised before the notice of deficiency was issued was the letter by the CPA, Mr. Potter. And what he said with respect to the carryover issue was that the suspended losses, even though they had been erroneously taken in previous years, could still be taken again. In other words, that there could be a double deduction. The government quite reasonably, I think, said, hey, wait a minute, and did not accept this argument. And then when they got together with the appeals officer and laid out the whole thing, the appeals officer said, well, that's an arguable position. I think perhaps you're right. But I'm not sure that everybody else would have thought they were right. It basically is a kind of a loophole. It was a very aggressive position on the part of Mr. Feersig. Well, it's a statutory loophole, right? I'm sorry? I mean, it's based on the statute. If it — In the plain words of the statute. There has been no — If you don't get to erase it by calling it a loophole, you might go to Congress and say, why don't you, you know, amend the statute? There has been no — no one has ever tried this before, to our knowledge. If it's a loophole, it's a new one, because we're not able — we have not found any challenges to the government's interpretation as set forth in the notice of deficiency before this. But in the end, you had to agree that they were right. He agreed that they were right. But certainly the government's position against accepting this very aggressive double deduction of a single loss was — was reasonable. It was substantially justified. And — Counsel, I'm having — I'm having trouble with the theory of the argument. The word loophole doesn't help me at all. It's just a journalist's word. I mean, my tax incentive is your loophole. Loopholes are the ones you don't like. Incentives are the ones you do. It doesn't mean anything. The code is the code. And I don't really get the idea that the IRS is entitled not to be omniscient about its own code and regs. I mean, in real life, nobody can be. Nobody — nobody can have a complete grasp because it's just too big. But to penalize taxpayers for not being — for being right because the IRS is wrong doesn't make sense to me. And it seems like that's what your argument basically is, that it's substantially justified for the taxpayer to have to spend a whole lot of money in order to explain its own code to the government. And once the explanation is given, the taxpayer is right. This is not a clear explanation of the code. This was something that — this was an argument that Mr. Feersig made that is a very aggressive argument and may or may not have been right. This particular appeals officer bought it. I'm sorry. What's wrong about the argument? You may say this has a result that we think is not fair or that the government doesn't like. But what's wrong with the statutory argument? Well, what's wrong with the statutory argument is what the shareholders claimed losses and deductions with respect to an S corporation in a year may not exceed its adjusted basis. The losses or deductions disallowed for one year for lack of an adequate basis may be carried over. Right. And the income realized by the corporation increases the shareholder's basis. Distribution and losses reduce it. But what's pointed out here is but not below zero. Essentially, in four previous years, the McKees had reduced their basis below zero by claiming these losses. And then they said that they could claim them again later on in the years at issue here because they couldn't have claimed them before. Why is that any different from the problem that when you have when you sell stock for less than you paid for it and you have a loss, your deduction for the long term loss has a cap, but you can carry it over? Well, it is a carryover. It's a very similar sort of thing. But they had not explained the details of this at all. They had not elaborated upon their argument until they got together with the appeals officer. We had simply this letter from Mr. Potter saying even though we've deducted it before, we can deduct it again because it was wrong when we did it before. But was this an argument that the IRS relented on or was this an argument that was this a position imposed upon the IRS over its objection? My impression is that this was ultimately a negotiated resolution. The appeals officer basically did negotiate it. He thought, well, this is an interpretation of the statute. We'll buy it. Other aspects of this case were also ---- The government could have contested and gone to ---- Oh, yeah. Yeah. The government could have contested it. So the government relented on this argument. Yes, it did. Blue polo it may be. Right. The government also split the baby with respect to the capital gains versus ordinary income on the real estate sales. In the ---- I don't understand why you could claim it was ordinary income anyway. It's ordinary income if you're a dealer in real estate. Yeah, but they weren't, were they? We believe they were, or at least there was substantial evidence. There were all these factors and they together agreed to split the baby. If there's ordinary income and an installment sale, then you have what is called the dealer tax, which had been asserted in the notice of deficiency and which ---- But you agreed to reduce that tax from $37,000 to $1,000? They were not wrong to have asserted it, which the McKees simply flat-out denied because we're not dealers. The computation, which is rather a complicated one, was incorrect. And as soon as the McKees pointed out that this computation is incorrect, the appeals officer said, you're right, and changed it, fixed it, as with a number of these other things. So the government's position was either on items that were not clear-cut, that were arguable, or were errors that were corrected as soon as they were pointed out, or were on sort of negotiated split the baby sorts of things. In all of these instances, the government's position was reasonable to start with, and as soon as the arguments were made clear, the facts laid out, it conceded or adjusted them and reached a settlement agreement less than six months after filing its answer in this case, which is really extremely prompt and which indicates that the government was working with the taxpayer. It's prompt for the government, but the government's not paying the lawyers' fees. Incidentally, I don't remember how much lawyers' fees are involved here. Do you happen to remember? It's around $30,000 altogether. And we are also contesting whether this is a reasonable amount and whether the taxpayers exhausted their administrative remedies. Well, you're so successful in negotiating the other part of the case. Is there hope for mediation on the case today? There's always hope. All right. $30,000 to save a client $220,000. I think I would have sent it with Christmas wrapping. Any further questions? Thank you, counsel. Any closing remarks you want to make? I would just like to mention that as we do like the Bertolino case in which this court said that where a case was settled promptly after the petition, the government was justified in responding negatively to the petition and then working out a settlement. Counsel, I was perhaps a little facetious and you didn't get what I was asking. Why is six months prompt? There are an awful lot of lawyers' work and lawyers' fees that happen in six months. In this case, the notice of deficiency was issued in March. The petition was filed three days later. The case went immediately to the appeals officer. There was correspondence early in the summer. They met, I believe it was only one day of meetings, in August. And a stipulation of settled issues in a very, it was a 28-page notice of deficiency. A stipulation of settled issues was signed on October 1st. I think given the complexity of this case, that's an amazingly prompt. Well, no one's accusing the government of stalling, but maybe the reason the taxpayer was right and the government was wrong and the government folded in six months is that the taxpayers, lawyers and accountants put a lot more work into it and got it right. We were obviously justified in issuing the notice of deficiency when even with our various concessions and splitting the baby and yielding in arguable matters, they still paid or agreed to 27 percent of the deficiency. Obviously, the government was substantially justified in such a case. But substantially justified doesn't, isn't, that requirement isn't satisfied merely because the taxpayer proved to be wrong in some respect with regard to their, no matter how slight. No. The government can be wrong if it still has a reasonable basis for its position. Right. But the mere fact that the taxpayer winds up paying something does not. Nor does that indicate. Necessarily equate to substantial justification on the part of the government. It's a multi-factor test and depends on the facts of the particular circumstance of the particular case. Thank you, counsel. Thank you, sir. We'll give you two minutes for rebuttal. I think counsel for the government was at least inferring that the appellant was attempting to take losses that were claimed in prior years to claim them again. This is absolutely false. The government filed a supplemental excerpt of record. And on page 15, it's clear that the losses that were being claimed in the years before the court were the suspended losses. By definition, under 1360.62, suspended losses are losses that have been disallowed. Right. Well, you can't take them because of the maximum number. Therefore, you suspended. You'd carry them forward. Right. That's a typical real estate transaction, right, when you have a passive ownership. Often that's the case. That's what we're talking about here, isn't it? It is. It is. I think she was suggesting that it reduced the base, that perhaps there was a reduction in basis that also occurred because of this. And that's what the appeals officer says on 15 of the supplemental. He says, Petitioner argued that appeals analysis is flawed because that analysis reduces the amount of the carryover suspended losses to the extent that excess losses have been claimed. And above that, he says, based on the, this is in paragraph two, based on the analysis, it was determined that a petitioner had claimed losses in excessive basis for years, which are now closed by statute. So I think what the agent was doing was saying that the basis was below zero. Therefore, we couldn't claim the suspended losses that were disallowed. And it were fresh losses, not the old losses. And there is a statute, section 1367 of the Internal Revenue Code, which says you can't have a basis below zero. And so this was clearly wrong because the agent ignored the statute in saying you can't have a basis below zero. And that's the reason why he disallowed the suspended losses. But in fact, what happens in this case, I mean, in another context, you take a suspended loss forward, you offset it against income. You don't have any income. And it just keeps on going forward until you get something. That's right, Judge Thomas. Yeah.
judges: Kleinfeld, Thomas, Leighton